## CIRCUIT COURT OF CHESTERFIELD COUNTY

Mary Newkirk

v.

Virginia State University et al.

April 7, 1986

Case No. (Chancery) 3323-85

By JUDGE MELVIN R. HUGHES, JR.

In this proceeding, plaintiff, Mary Newkirk (Newkirk), a tenured professor of business administration at Virginia State University (the University), seeks a permanent injunction prohibiting the University and certain administrators from assigning her from the Department of Business Administration to the Department of Public Administration in the School of Business. She also seeks to enjoin the University from refusing to provide her with appropriate teaching assignments in the Department of Business Administration.

Hearings on the merits began on November 27, 1985, and were continued to January 31, 1986. On November 27, 1985, the Court took under advisement defendants' motion to strike subject to receipt of memoranda of law according to a briefing schedule. After the motion was denied and the hearing resumed on January 31, 1986, counsel provided final argument on February 5, 1986, and the case has since been under advisement. A hearing on a temporary injunction was conducted on August 16, 1985, and by order entered on August 20, 1985, this relief was denied. For reasons that follow, permanent injunctive relief is also denied.

Newkirk, a lawyer licensed to practice in Nebraska, became employed with the University on January 4, 1974,

as a professor in the Department of Business Administration. She was granted tenure in November, 1980.

In May, 1985, after accepting a written contract for appointment as a tenured professor of business administration, Newkirk was transferred as stated above, effective the fall semester, 1985. Defendants testified that Newkirk was transferred as part of achieving an overall goal of accreditation for the School of Business. Except for a brief period in early 1985, plaintiff has taught only business law courses. Now, pursuant to the transfer, she teaches two courses in business law and two courses in public administration, one designated as a course in intergovernmental relations and the other designated as a course in sub-national governments. The intergovernmental relations course is concerned with studying the operation of various government-sponsored programs; the subnational governments course is concerned with studying the operation of governments below the national level. Fundamentally, this is an employment contract case. By a written contract dated May 10, 1985, Newkirk received an appointment as a tenured Professor of Business Administration for the current academic year. In its other pertinent aspects, the contract, *inter alia*, states as follows:

> Your duties and responsibilities will be defined for you by the Chairperson of your Department and approved by the Dean of your School and the Provost. These will involve the load of scheduled teaching for the academic year . . .
> Your appointment is subject to prevailing Policies, Resolutions and Regulations of the Board of Visitors and the policies governing employment as provided in the *University Handbook*, as amended by subsequent Board actions, and the Bylaws of the Board of Visitors . . . .

Plaintiff contends that her appointment is only for teaching duties in the business administration department and that her duties and responsibilities must, because of the plain, direct meaning of the words appointing her as a professor of business administration, restrict the University to assigning her only those teaching duties in that department. She contends that all provisions in

the contract can be harmonized only with respect to her appointment as professor of business administration to teach only business law courses.

In support of these contentions, Newkirk cites familiar principles applied in contract disputes: first, words will be given their usual ordinary, popular meaning; second, a contract will be more strictly construed against the party who prepared it; third, the contract must be viewed as a whole with specific language governing general language.

While these principles are settled in law in matters of contract construction, it is important to note that there are no Virginia cases and very few cases from other jurisdictions that offer guidance. What is helpful is to look at the nature of tenure employment in law and experiences on the effects of exigency on tenure, as I believe has occurred here, when unforeseen future events affect benefits and duties relative to performance. *Levitt v. Board of Trustees of Nebraska State Colleges*, 376 F. Supp. 945, 950 (D. Nebr. 1974). Tenure should be examined according to norms and expectations founded upon such agreements. *Greene v. Howard University*, 134 U.S. App. D.C. 81, 88, 412 F.2d 1128, 1135 (D.C. Cir. 1969).

Tenure stands for the right to continued service unless good cause be shown for removal. *Krotkoff v. Goucher College*, 585 F.2d 675, 679 (4th Cir. 1978); *1940 Statement of Principles on Academic Freedom and Tenure*, American Association of University Professors. In the face of financial exigency or discontinuance or reduction in courses, judicial inquiry is appropriate only to determine if the action taken conforms to the institution's own rules, was arbitrary, irrational or lacked good faith. *Gentler v. Goodgold, et al.*, 487 N.Y.S. 565 (1985).

I cannot find that Newkirk's appointment is violated when while still teaching business law courses she is asked to teach two courses in public administration of the type and description of the ones here, without diminution in pay, benefits or other amenities attending a professor with tenure. This is so even when, by the evidence, the parties disagree on whether the administration has interpreted the accreditation standards correctly and when they disagree on whether the administration is going about this end in an appropriate way by this transfer.

The appointment is expressly conditioned on prevailing policies of the Board of Visitors, and Newkirk has an adequate remedy at law by way of an appropriate action at law for damages.

Under these circumstances, while not all academic and administrative decisions are immune from judicial review, where subjective professional judgment is involved, public policy compels restraint by the judiciary where institutions are peculiarly capable of making decisions appropriate and necessary for continued existence. *Gentler v. Goodgold, et al., supra*; *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985).

Accordingly, I have this day entered judgment for the defendants.